[S. F. No. 21243. In Bank. Aug. 20, 1963.]

ALLEN GRIFFIN, Petitioner, v. BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY et al., Respondents.

Hudson, Martin, Ferrante & Street, Carmel C. Martin, Jr., and Donald H. Smith for Petitioner.

Saul M. Weingarten, City Attorney (Seaside), as Amicus Curiae on behalf of Petitioner.

William H. Stoffers, County Counsel, for Respondents.

GIBSON, C. J.—Petitioner, an elector of the 5th Supervisorial District of Monterey County, acting on behalf of all such electors, seeks a writ of mandate to compel the board of supervisors to reapportion the supervisorial districts of Monterey County so as to make them nearly equal in number of electors. He contends that the board has arbitrarily and capriciously refused to redistrict the county and has thereby discriminated against the voters of the 5th district.

In the main the facts are undisputed. The county was dis-

tricted in 1884 pursuant to section 16 of the Act to Establish a Uniform System of County and Township Government (Stats. 1883, ch. 75) which required the districts to be "as nearly equal in population as may be." The districting ordinance was amended in 1886 and has since remained unchanged. There are five districts, each of which elects one supervisor. When the districts were established the difference in number of electors between the most populous and the least populous districts was 1½ to 1.[1] However, subsequent changes in population have caused a much greater disparity. In 1962 the number of registered voters in the county was 68,-565. Thirty-four thousand and fifty-nine voters, or approximately 50 per cent, resided in the 5th district, which includes the Monterey Peninsula; 22,687 voters, or 33 per cent, resided in the 2d district, which included Salinas; 5,677 voters, or a little over 8 per cent, resided in the 1st district; 5,204 voters, or a little less than 8 per cent, resided in the 3d district; and 938 voters, or less than 1½ per cent, resided the 4th district. Three supervisors, a majority of the board, are thus elected by approximately 17 per cent of the voters.

In 1956 an initiative ordinance altering the boundaries of the districts was rejected by the voters. Pursuant to section 25009 of the Government Code, enacted in 1961, a redistricting committee was appointed in Monterey County, and in August 1962 a majority of the committee, consisting of the members from the three districts having the least population, advised against redistricting prior to the 1970 census.[2] In September 1962 petitioner demanded that the board of supervisors redistrict the county on a population basis. The board did not act on the demand and adopted the majority report of the redistricting committee.

The subject of changing the supervisorial districts of counties is dealt with in section 25001 of the Government Code, which reads: "By a two-thirds vote of the members, the board

[1] See Stuart C. Hall, "County Supervisorial Districting in California," Bureau of Public Administration, University of California, 1961 Legislative Problems, No. 5, p. 35.

[2] Section 25009 reads: "The board of supervisors of each county, on or before March 1, 1962, shall appoint a committee composed of residents of the county to study the matter of changing the boundaries of the county supervisorial districts. Within six months thereafter, the committee shall report to the board its recommendations on the need for a change of boundaries, and the change suggested. Thereafter, such a committee shall be appointed and shall make its report within one year after the final population figures determined in each federal decennial census have been released. Recommendations of the committee are advisory only."

may change the boundaries of any or all of the supervisorial districts of a county. The districts shall be as nearly equal in population as may be, except that in establishing the boundaries of the districts the board may give consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts.''

Under this section apportionment according to population is the primary goal in redistricting, and the other factors enumerated may only be given a subsidiary effect and cannot warrant large deviations from equality of population. This construction is in accord with the position taken by this court in *Blotter* v. *Farrell,* 42 Cal.2d 804, 811 [270 P.2d 481], where, with respect to the redistricting of councilmanic districts, it was recognized that our system of government requires whenever possible equality of population among election areas and that drastic population differences may destroy the representative character of government. (See also *Harnett* v. *County of Sacramento,* 195 Cal. 676, 680 [235 P. 445].)

The legislative history of the provision confirms the above construction. Section 25001 was, with a slight change, derived from section 4029 of the Political Code as amended in 1943.[3] Prior to that year section 4029 provided that the districts ''shall be as nearly equal in population as may be'' and did not mention any other factors which might be considered. As originally introduced, the 1943 bill to amend section 4029 (A.B. 1990) would have deleted this provision and would have listed population merely as one of the several factors to be considered. The fact that before enactment the bill was amended to retain the prior provision requiring equality of population shows a legislative intent that population remain the primary consideration.

The Assembly Interim Committee on Municipal and County Government, in a report on supervisorial redistricting dated November 1962, accepted the above construction of section 25001 as correct. (Assembly Interim Com. Rep., 1961-1963, vol. 6, No. 18, p. 9.) It should also be noted that section 23361 of the Government Code, which relates to the formation of new counties out of existing ones, provides that the supervisorial districts into which a new county is to be divided

[3]The only change was that the word ''except'' replaced the word ''provided'' which had appeared in section 4029 after the words ''as may be.''

shall contain as nearly as practicable an equal population.

The apportionment now existing in Monterey County, where a district encompassing 50 per cent of the electorate has the same representation as one containing but 1½ per cent, obviously constitutes a drastic deviation from equality of population. Such a disparity cannot be justified on the basis of the other factors enumerated in section 25001, which, as we have seen, do not warrant large deviations from equality of population.

We cannot agree with the contention that section 25001, by providing that the board "may" change district boundaries, leaves the matter of redistricting entirely to the board's discretion and that therefore the board cannot be required to redistrict however unreasonable its refusal to do so may be. The section, in setting forth the primary standard to be applied, uses the mandatory language that the districts "shall be" as nearly equal in population as may be. Even with respect to a situation in which there was no statute expressly authorizing redistricting, we pointed out in *Blotter* v. *Farrell, supra,* 42 Cal.2d 804, 811, that councilmanic districts "must be" redistricted periodically to prevent drastic population differences from destroying the representative system of government. Although section 25001 gives a board of supervisors some discretion in deciding whether redistricting has become necessary to conform to the standard there set forth, this discretion is not unlimited, and where there are drastic deviations from equality of population the refusal to redistrict is an abuse of discretion.

The cases of *Dozier* v. *Board of Supervisors,* 130 Cal.App. 746 [20 P.2d 726], and *Peterson* v. *Board of Supervisors,* 93 Cal.App. 490 [269 P. 743], are disapproved insofar as they are authority for the view that a board of supervisors has unlimited discretion to refuse to redistrict irrespective of how unequal in population the existing districts may be.

The board is under a duty to redistrict the county, and section 25001 as we have construed it furnishes the standard to be applied.

Let a peremptory writ of mandate issue directing the board to redistrict the supervisorial districts of Monterey County within a reasonable time in accordance with section 25001 of the Government Code as construed in this opinion. This court retains jurisdiction of the matter in order to determine whether the writ is complied with and to take further ap-

propriate steps if the board does not show compliance within a reasonable time.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.