[No. S001833. Aug. 24, 1989.]

COMMON CAUSE OF CALIFORNIA et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY et al., Defendants and Appellants.

COUNSEL

De Witt W. Clinton, Raymond G. Fortner, Jr., Philip H. Hickok, Sidley & Austin, Charles S. Vogel and Lori Huff Dillman for Defendants and Appellants.

Daniel J. Popel, Paul D. Kamenar, Marianne Mele Hall, Phillip D. Mink, Ronald A. Zumbrun, Anthony T. Caso and Jonathan M. Coupal as Amici Curiae on behalf of Defendants and Appellants.

Hufstedler, Miller, Carlson & Beardsley, Dennis M. Perluss, Linda J. Wong, Richard Fajardo, Roy M. Ulrich, Mark D. Rosenbaum, Paul L. Hoffman, William J. Genego, Margaret C. Crosby, Alan Schlosser and Edward Chen for Plaintiffs and Respondents.

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Marian M. Johnston, Deputy Attorney General, R. Samuel Paz, Munger, Tolles & Olson, Bradley S. Phillips and Felicia A. Marcus as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

LUCAS, C. J.—The Registrar-Recorder, County Clerk, and Board of Supervisors of the County of Los Angeles (collectively referred to as County), appeal from the granting of a preliminary mandatory injunction requiring them to deputize as voting registrars certain county employees who have frequent contact with low-income and minority citizens. The Court of Appeal affirmed the trial court's order. We reverse.

### I. BACKGROUND

County operates a "voter outreach program" which includes various measures designed to encourage eligible citizens to register to vote. It distributes registration-by-mail forms in several thousand locations throughout the county, including libraries, post offices, fire stations, state and local public services offices, and state Department of Motor Vehicles branches. It mails such forms to registered voters to encourage them to keep their registrations current. County also maintains a toll-free telephone information service, uses news bulletins and public service announcements to promote registration, conducts an educational program at local high schools, and provides a van to volunteer organizations conducting community

registration drives. It does not, however, deputize significant numbers of its employees as voting registrars.

Plaintiffs, a Los Angeles County taxpayer and several organizations concerned with voting rights, brought the present action in superior court,[1] seeking declaratory relief, a writ of mandate, and a preliminary and permanent injunction requiring County to implement an employee deputization program, under which county employees who have frequent contact with non-White and low-income citizens would be deputized as registrars. Plaintiffs contend that a great disparity exists between the registration rates of high-income White citizens and those of low-income and minority citizens, and that an employee deputization program would reduce this disparity. Their complaint alleges that County's present voter outreach program violates the requirements of the Elections Code and the equal protection guaranties of the United States and California Constitutions.

Simultaneously with the filing of this action, plaintiffs moved for a preliminary injunction requiring County to implement an employee deputization program. In support of their motion, plaintiffs produced a statistical analysis demonstrating disparities based on race and income in voter registration rates in the county, and declarations of various prominent political scientists to the effect that voter registration requirements greatly depress actual voter turnout. County, in response, produced a statistical analysis concluding that age and education are more important factors than race or income in predicting voter registration patterns.

After a hearing, the trial court granted a preliminary injunction.[2] Applying the usual test for reviewing the propriety of a preliminary injunction,

---

[1] Plaintiffs first sought relief by way of an original petition for a writ of mandamus in this court, which we summarily denied on May 7, 1986.

[2] The injunction specifically requires that: "1. Within 30 days of the entry of this Order, defendants . . . shall adopt and implement voter registration programs that will comply with the mandate of California Elections Code sections 302 and 304 (and accompanying administrative regulations). These programs shall include the following elements: [¶] (a) The County Registrar shall identify, deputize and train appropriate County public employees, except emergency medical, crisis, fire, and law enforcement personnel, who have regular contact in the performance of their daily duties with those subgroups of the community, including non-whites and low-income persons, who have lower rates of voter registration than the white and high-income subgroups of the community. Nothing in this Order shall be construed to prevent the County from deputizing public employees for the purpose of offering registration assistance to individuals or members of sub-groups not otherwise identified in this Order. [¶] (b) Those County employees who are deputized pursuant to this injunction shall discharge their duties as Deputy Registrars by engaging in a brief dialogue with their clients, along the following lines: [¶] (i) 'Are you registered to vote?' [¶] (ii) 'If you would like to register, I can provide you with a voter registration card'; [¶] (iii) 'Please fill out and sign the card, and I will forward it to the County Registrar, or you can mail it in yourself'; [¶] (iv) 'The decision to register or not to register is yours. It will not affect your receipt of County services in any

the Court of Appeal affirmed. It sustained the trial court's finding that the probability of plaintiffs' success on the merits at trial, together with the balance of harm (i.e., the likely degree of harm flowing from a failure to issue the injunction compared to such harm flowing from its issuance), justified issuance of the preliminary mandatory injunction. The Court of Appeal determined that plaintiffs had demonstrated a strong likelihood of success on the merits on either of two statutory theories: (i) that the Elections Code requires the implementation of an employee deputization program if such a program will maximize registration; and (ii) even if the code does not require such a program, a court may require that one be implemented as a remedy for a county's violation of other requirements of the code. The Court of Appeal did not reach plaintiffs' constitutional claims.

County has not challenged the propriety, as a procedural matter, of awarding interim mandamus relief that neither preserves the status quo nor restores a status quo that previously existed. (Cf. *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 536-539 [72 Cal.Rptr. 790, 446 P.2d 790].) Because any error would not be jurisdictional, we do not address the issue. Rather, we conclude there is *no* likelihood that plaintiffs could prevail on the merits at trial. Thus, the Court of Appeal erred in upholding issuance of the preliminary injunction.

## II. DISCUSSION

### A. *Standing*

County offers three reasons why plaintiffs lack standing to bring this action. First, it argues taxpayers have no standing under Code of Civil Procedure section 526a to force a municipality to expend funds to adopt a new program in the absence of any illegal expenditure by that municipality for an existing program. Second, County ascribes to the Attorney General exclusive standing to enforce the relevant provisions of the Elections Code. Third, County asserts plaintiffs failed to exhaust their administrative remedies before filing suit. ■ Although County did not raise these issues before the Court of Appeal, contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding. (*McKinny* v. *Board of Trustees* (1982) 31 Cal.3d 79, 90 [181 Cal.Rptr. 549,

---

way.' [¶] (c) Those County employees who are deputized pursuant to this injunction shall not engage in any partisan political activity in discharging their duty as Deputy Registrars. [¶] 2. The County, the County Registrar, and the County Clerk are ordered to undertake any other steps necessary to achieve the highest possible level of voter registration in Los Angeles County by October 6, 1986, the registration deadline for the November 1986 general election . . . ."

642 P.2d 460]; *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 619 [156 Cal.Rptr. 718, 596 P.2d 1134].) We therefore consider each claim in turn.

### 1. *Taxpayer Standing*

Plaintiff Mark Ridley-Thomas is a Los Angeles County taxpayer. The other plaintiffs are organizations whose members include Los Angeles County taxpayers. They assert standing to seek an injunction under Code of Civil Procedure section 526a, which provides taxpayers with standing to bring "An action to obtain a judgment, restraining and preventing any illegal expenditure of . . . funds . . . of a county . . . ." County contends that plaintiffs lack standing under section 526a because the object of their suit is not to halt any existing or threatened illegal expenditure, but to require County to expend funds to incorporate a new feature into its existing voter outreach program.

We find it unnecessary to reach the question whether plaintiffs have standing to seek an injunction under Code of Civil Procedure section 526a, because there is an independent basis for permitting them to proceed. The ultimate relief sought in this action includes a writ of mandate compelling adoption of the employee deputization program. ■ " ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced . . . ." ' " (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; see 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 74, pp. 713-714, and cases cited.) The question in this case involves a public right to voter outreach programs, and plaintiffs have standing as citizens to seek its vindication.

Given that plaintiffs have standing as citizens to seek the relief granted here at a trial on the merits, they have standing to seek the same relief on a provisional basis, if such relief is otherwise proper.[3] The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. (*Baker* v. *Carr* (1962) 369 U.S. 186, 204 [7 L.Ed.2d 663, 677-678, 82 S.Ct. 691]; *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 159 [101 Cal.Rptr. 880, 496 P.2d 1248].) This purpose is met when, as here, plaintiffs possess standing to have the

---

[3] Our approval of plaintiffs' standing does not indicate approval of the grant of a preliminary or permanent injunction when the relief sought may be obtained by way of a mandamus action. We hold only that a party who has standing to bring an action has standing to seek available provisional relief in that action.

underlying controversy adjudicated and the desired relief granted after a trial on the merits; no greater interest is required to seek the same relief on an interim basis. (Cf. *Harman, supra,* 7 Cal.3d at pp. 159-160 [taxpayer standing to seek injunction establishes standing to seek money damages on behalf of municipality].) Accordingly, it is unnecessary for plaintiffs to show a separate basis for standing to obtain a preliminary injunction, distinct from the basis for their standing to seek a writ of mandate at a trial on the merits.

## 2. *Exclusive Enforcement*

 Elections Code section 304[4] directs the Secretary of State to formulate regulations requiring counties to develop and implement voter outreach programs. It also provides for the Secretary to review the design and implementation of county outreach programs annually and to report violations to the Attorney General. County suggests that only the Attorney General has standing to bring a court action against it to enforce the statute.

We disagree. First, the plain language of section 304 contains no limitation on the right of private citizens to sue to enforce the section.[5] To infer such a limitation would contradict our long-standing approval of citizen actions to require governmental officials to follow the law, expressed in our expansive interpretation of taxpayer standing (see *Harman, supra,* 7 Cal.3d 150, 160; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-268 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Wirin* v. *Parker* (1957) 48 Cal.2d 890, 894 [313 P.2d 844]), and our recognition of a "public interest" exception to the requirement that a petitioner for writ of mandate have a personal beneficial interest in the proceedings (*Green* v. *Obledo, supra,* 29 Cal.3d 126, 144; *Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627]). In the absence of either an express limitation on citizen standing or any indication of legislative intent to confer exclusive powers on the Attorney General, we decline to impose such a limitation on citizen actions to enforce section 304 and its accompanying regulations. (Cf. *People* v. *City of South Lake Tahoe* (E.D.Cal. 1978) 466 F.Supp. 527 [conferral of enforce-

---

[4] Unless otherwise indicated, all further statutory references are to the Elections Code.

[5] As originally enacted, the section expressly authorized the Attorney General to bring actions, including injunctive actions, to remedy violations based on failure to implement programs to meet minimum requirements established by the Secretary of State. (Stats. 1975, ch. 704, § 3.5, p. 1673.) This language was eliminated when the statute was recodified the following year. (Stats. 1976, ch. 1275, § 12, p. 5638.) Removal of this language may have been intended to eliminate surplusage, in light of the long-standing rule that in the absence of legislative restriction the Attorney General has a common law power to bring any proceeding deemed necessary to enforce state law. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15 [112 Cal.Rptr. 786, 520 P.2d 10].) Its removal may, however, have been intended to avoid the implication that the Attorney General's enforcement power is exclusive.

ment power on Attorney General not determinative of exclusivity question under California law].)

Second, plaintiffs' action is not based solely on section 304. To the contrary, they rely principally on section 302, which authorizes county clerks to deputize citizens as deputy registrars. It cannot reasonably be maintained that, by enacting and providing for the enforcement of section 304—which mandates the adoption of outreach programs—the Legislature intended to preclude citizens from bringing actions to enforce the provisions of section 302, a preexisting statute that governs counties' deputization of voting registrars. Were we to accept County's contention, courts would be required to consider claims alleging violations of section 302 in isolation from closely related claims alleging violations of section 304 and its accompanying regulations. Considerations of judicial efficiency militate strongly against such a result.

### 3. *Exhaustion of Administrative Remedies*

Amicus curiae argues on County's behalf that the suit is barred by the doctrine of exhaustion of administrative remedies, because the Secretary of State has power to remedy violations of the Elections Code through approval of outreach programs and review of their implementation. ■ It is settled, however, that " ' "the mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an 'administrative remedy' unless the statute or regulation under which that power is exercised establishes clearly defined machinery for the submission, evaluation and resolution of *complaints by aggrieved parties*." ' " (*Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 912 [141 Cal.Rptr. 133, 569 P.2d 727], italics in original.) Neither the Elections Code nor the accompanying administrative regulations creates a mechanism for submission of complaints regarding outreach programs to the Secretary of State or any other agency. Hence we reject amicus curiae's contention.[6]

### B. *Issuance of the Injunction*

#### 1. *Standard of Review*

■ In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his claim, and

---

[6] We do not reach County's arguments concerning the doctrine of primary jurisdiction. The issue is not a jurisdictional one (see *E.B. Ackerman Importing Co.* v. *City of Los Angeles* (1964) 61 Cal.2d 595, 596-598 [39 Cal.Rptr. 726, 394 P.2d 566]), and was not raised before the trial court or the Court of Appeal.

(ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction.[7] (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1227 [240 Cal.Rptr. 829, 743 P.2d 889]; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].) The scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits.

The ultimate relief sought in plaintiffs' complaint includes an injunction and a writ of mandate to compel County to fulfill its duties under the Elections Code. Mandamus, rather than mandatory injunction, is the traditional remedy for the failure of a public official to perform a legal duty. (See authorities cited in 42 Am.Jur.2d, Injunctions, § 19, p. 750, § 43, p. 783, and 43 C.J.S. (rev. 1978) Injunctions, § 3, pp. 742-743.) Thus, the legal principles governing judicial compulsion of official acts have developed under the rubric of mandamus rather than injunction.[8] An order after trial requiring the implementation of an employee deputization program, even if captioned an injunction, would be identical in purpose and function to a writ of mandate. Thus, we evaluate the merits of plaintiffs' claim for this relief in light of the legal principles governing mandamus actions. (See *Miguel* v. *McCarl* (1934) 291 U.S. 442, 452 [78 L.Ed. 901, 907, 54 S.Ct. 465]; *Fallini* v. *Hodel* (9th Cir. 1986) 783 F.2d 1343, 1345.)

Mandamus will lie to compel a public official to perform an official act required by law. (Code Civ. Proc., § 1085.) Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner. Mandamus may issue, however, to compel an official both to exercise his discretion (if he is required by law to do so) and to exercise it under a proper interpretation of the applicable law. (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 118 [130 Cal.Rptr. 257, 550 P.2d 161]; *Anderson* v. *Phillips* (1975) 13 Cal.3d 733, 737 [119 Cal.Rptr. 879, 532 P.2d 1247].) As the dissent correctly notes, mandamus will lie to correct an abuse of discretion by an official acting in an administrative capacity. (Dis. opn. at pp. 451-452.) However, County's authority to decide whether and how to deputize its employees is, as we will explain, quasi-legislative, and

---

[7] The parties devote considerable attention to the question whether the test for a mandatory preliminary injunction requires a higher degree of probability of success on the merits than the test for a prohibitory preliminary injunction. In light of our conclusion below that there is not only no likelihood, but indeed no *possibility* that plaintiffs will prevail on the merits of their claim to the specific relief granted in this case, it is unnecessary to reach this issue.

[8] County has not challenged the issuance of the preliminary injunction on the ground that mandamus is an available legal remedy. With regard to actions for permanent injunctive relief, it is generally held that such an objection is not jurisdictional and may be waived. (See 30 C.J.S. (rev. 1965) Equity, p. 971 and cases cited.) We see no basis for distinguishing issuance of a preliminary injunction. We therefore deem the issue waived for purposes of the preliminary injunction under consideration.

therefore is not subject to the broader review of administrative acts. (See *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83].)

Applying these principles to the trial court's order of employee deputization, we find the relief granted is unavailable under either theory expounded by the Court of Appeal. As will appear, we conclude that the Elections Code does not require the deputization of county employees as voting registrars, even if such deputization would substantially further the statutory goal of maximum registration. Assuming arguendo that County's outreach program violates sections 302 or 304 and the accompanying administrative regulations, we also conclude the Court of Appeal erred in affirming the trial court's order requiring deputization as a remedial device.

Because, as a matter of law, there is no possibility that the relief sought could be properly awarded after a trial on the merits, such relief may not be awarded on a provisional basis. Accordingly, the Court of Appeal's affirmance of the preliminary injunction must be reversed.

### 2. *Deputization as a Statutory Requirement*

■ The Court of Appeal concluded that sections 302 and 304, read together, *mandate* deputization of county employees as registrars if doing so will maximize voting registration. We disagree.

Section 302, subdivision (b), states that "county clerks . . . *shall* deputize as registrars qualified citizens in such a way as to reach most effectively every resident of the county." (Italics added.) In contrast, section 302, subdivision (e), provides that "the governing board of any county . . . or other public agency, *may* authorize and assign any of its officers or employees to become deputy registrars of voters . . . ." (Italics added.) ■ It is a well-settled principle of statutory construction that the word "may" is ordinarily construed as permissive, whereas "shall" is ordinarily construed as mandatory, particularly when both terms are used in the same statute. (*Santa Cruz Rock Pavement Co.* v. *Heaton* (1894) 105 Cal. 162, 165 [38 P. 693]; *Rosenfield* v. *Superior Court* (1983) 143 Cal.App.3d 198, 202 [191 Cal.Rptr. 611].) ■ Accordingly, section 302, subdivision (e), does not *require* deputization of county employees.

The Court of Appeal held that section 302, subdivision (b), imposes on counties a mandatory duty to deputize employees *if* such deputization is necessary to reach most effectively every resident of the county. It is an elementary principle that specific provisions of a statutory scheme modify more general provisions of the same scheme. (Code Civ. Proc., § 1859; *Long Beach City School District* v. *Payne* (1933) 219 Cal. 598, 605 [28 P.2d 663];

*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].) Section 302, subdivision (b), imposes a general duty to deputize qualified citizens as registrars in such a way as to reach most effectively every resident of a county. Section 302, subdivision (e), specifically addresses one class of potential registrars—public employees—and squarely places the decision whether to adopt a program deputizing such employees in the discretion of the governing board of the county. The general requirement of section 302, subdivision (b), cannot override the specific discretionary language of section 302, subdivision (e). Accordingly, section 302, subsection (b), does not mandate the deputization of employees as registrars, even if it could be shown that such deputization would constitute the most effective means of reaching every resident of the county.

In concluding that an employee deputization program is mandated if it can be shown that deputization will maximize voter registration, the Court of Appeal also relied on the Legislature's declaration, in section 304, of its intent that "voter registration be maintained at the highest possible level." Unlike section 302, subdivisions (b) and (e), however, section 304 imposes a duty on *the Secretary of State* to devise regulations and monitor the counties' compliance with the regulations, rather than imposing a duty directly on counties. The counties' duties under section 304 are governed by the Secretary of State's administrative regulations.[9] The precatory declaration of intent expressed in the statute must be read in context as a principle to guide the Secretary of State in promulgating appropriate regulations. It cannot be viewed as independently creating substantive duties imposed on counties in addition to those imposed by the regulations; nor may it be torn from its context to alter the counties' duties under section 302.

We conclude that neither section 302 nor section 304 requires County to adopt the employee deputization program sought by plaintiffs. The Court of Appeal's conclusion that the two statutes "read together" create such a duty if it can be shown that such a program will maximize voter registration is unsupportable. Although the Legislature has made clear its desire to maximize registration (in its statements of intent and in various substantive provisions of the Elections Code), it also has made clear in the plain language of section 302, subdivision (e), that the decision whether to adopt an employee deputization program rests in the discretion of the individual counties.

---

[9] No challenge to the validity of the Secretary of State's regulations has been raised in this proceeding. Thus we presume that the regulations promulgated under section 304 constitute a valid interpretation of County's duties under that section. Those regulations require that counties solicit assistance from government agencies "in providing the incidental use of their premises and/or personnel for the purposes of outreach." (Cal. Code Regs., tit. 2, § 20001, subd. (f).) It is undisputed here that the regulations themselves do not require employee deputization programs.

Thus, regardless of whether counties have a ministerial duty under section 304 to implement voter outreach programs or under section 302 to deputize qualified citizens as registrars, we read section 302, subdivision (e), as, in essence, enabling legislation that authorizes counties to deputize their employees should they decide to do so. The decision whether to take advantage of the authority granted by section 302, subdivision (e), is not administrative, as the dissent asserts; it is a quasi-legislative decision entrusted solely to local elected officials.

### 3. *Deputization as a Remedial Device*

Plaintiffs alternatively assert that even if the statutory scheme does not mandate deputization of county employees, a court may order deputization as a remedy for a county's failure to implement the statutory scheme, or for its violation of federal or state constitutional equal protection guaranties. Under this theory, although County might have found ways to implement the requirements of the Elections Code and to meet equal protection standards without the deputization program, in light of its failure to do so the court could order deputization if, in its judgment, such a measure would effectively remedy County's violation of the law. The Court of Appeal did not reach plaintiffs' equal protection claims, which were rejected by the trial court.

As noted above, it is well settled that although a court may issue a writ of mandate requiring legislative or executive action to conform to the law, it may not substitute its discretion for that of legislative or executive bodies in matters committed to the discretion of those branches. In *Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929], we noted that "the courts may not order the Legislature or its members to enact or not to enact, or the Governor to sign or not to sign, specific legislation . . . ." (*Id.* at p. 751.) Similarly, although a court may order a local legislative body to perform a nondiscretionary ministerial act, it may not control a local board's discretion. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609].)

*Serrano* is instructive regarding the proper role of a court in providing remedies for violations of law by other branches of government. In that case we rejected a claim that the trial court had exceeded its jurisdiction by issuing an order requiring the Legislature and the Governor to adopt a plan for school financing in conformity with state constitutional guaranties of equal protection. We noted with approval that the trial court "explicitly and properly refrained from issuing directives to the lawmakers and the chief executive, stating in its judgment: '. . . [T]his judgment is not intended to require, and is not to be construed as requiring, the adoption of any

particular plan or system for financing the public elementary and secondary schools of the state . . . .'" (*Serrano, supra,* 18 Cal.3d at p. 752.)

Unlike the court in *Serrano,* the trial court in this case did not limit its order to requiring governmental defendants to take action in conformity with the law. Its order required County to take a particular course of action—deputization of public employees—specifically committed to County's discretion by statute. (§ 302, subd. (e).)

In *Legislature* v. *Reinecke* (1973) 10 Cal.3d 396 [110 Cal.Rptr. 718, 516 P.2d 6], we selected a reapportionment plan for the state (ordinarily a legislative act) to remedy the failure of the other branches to effect a plan conforming to the constitutional requirement of equal protection. Our decision in *Reinecke,* however, was issued only after the Legislature was given a reasonable opportunity to formulate a constitutionally valid plan. (*Id.* at p. 400.) We declined in that case to issue an order to the Legislature, relying on the parties to accede to our stated holdings. (*Id.* at p. 407; see also *Young* v. *Gnoss* (1972) 7 Cal.3d 18, 29 [101 Cal.Rptr. 533, 496 P.2d 445] [declining to issue order to county clerks, relying on them to accede to holding].) Procedures that give other branches of government a reasonable opportunity to devise plans to correct violations of law in matters involving the exercise of their discretion are required by the well-settled rule that mandamus generally will not issue to control discretion. A court seeking to remedy a violation of law should not require a particular remedy unless the respective governmental entity has no discretion to exercise (as when the particular duty is made ministerial either by statute or by constitutional compulsion)[10] or unless, as in *Reinecke,* it fails to exercise that discretion after being given a reasonable opportunity to do so.

Accordingly, the Court of Appeal erred in upholding the issuance of the preliminary injunction. The statutory scheme does not require implementation of an employee deputization program. Even assuming arguendo that County's present outreach program is inadequate to fulfill the requirements of the Elections Code or violates equal protection principles, the trial court's order requiring an employee deputization program over County's objection was not an available remedy for the alleged violation.

### 4. *Disposition*

In view of the foregoing conclusions, we need not decide whether the Court of Appeal erred in its balance-of-harm analysis. The likelihood of

---

[10]Significantly, plaintiffs do not contend that a deputization program is the only possible remedy for the equal protection violation they allege. Thus, their equal protection challenge, even if meritorious, would not justify the trial court's order requiring an employee deputization program.

success on the merits and the balance-of-harm analysis are ordinarily "interrelated" factors in the decision whether to issue a preliminary injunction. (*King* v. *Meese, supra,* 43 Cal.3d 1217, 1226; *IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) The presence or absence of each factor is usually a matter of degree, and if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his favor. (*King* v. *Meese, supra,* 43 Cal.3d at pp. 1227-1228 [dictum].) In this case, however, there is no likelihood that plaintiffs will prevail on their claim for specific injunctive relief under either of their asserted theories. A preliminary injunction may not issue without some showing of potential entitlement to such relief.

Accordingly, we reverse the decision of the Court of Appeal affirming the issuance of the injunction and order the matter remanded to the Court of Appeal. The Court of Appeal is directed to remand this matter to the trial court with directions to vacate the preliminary injunction and for further proceedings in accordance with this decision. On remand, plaintiffs remain free to renew their contentions that County has refused to deputize qualified citizens as registrars in accordance with the requirements of section 302, subdivision (b), and that its voter registration program violates equal protection guaranties, and they may seek other appropriate relief not inconsistent with this opinion.

Panelli, J., Eagleson, J., Kaufman, J., and Arguelles, J.,* concurred.

**BROUSSARD, J.**—I respectfully dissent. The right to vote is fundamental because in a democracy it is "preservative of all rights." (*Yick Wo* v. *Hopkins* (1886) 118 U.S. 356, 370 [30 L.Ed. 220, 226, 6 S.Ct. 1064].) Requirements burdening the right to vote are subject to the strictest of scrutiny. (*Dunn* v. *Blumstein* (1972) 405 U.S. 330, 336, 342 [31 L.Ed.2d 274, 280-281, 284, 92 S.Ct. 995]; *Young* v. *Gnoss* (1972) 7 Cal.3d 18, 22 [101 Cal.Rptr. 533, 496 P.2d 445]; *Castro* v. *State of California* (1970) 2 Cal.3d 223, 234 [85 Cal.Rptr. 20, 466 P.2d 244]; *Otsuka* v. *Hite* (1966) 64 Cal.2d 596, 602-603 [51 Cal.Rptr. 284, 414 P.2d 412]; *Keane* v. *Mihaly* (1970) 11 Cal.App.3d 1037, 1041 [90 Cal.Rptr. 263].) The record in the instant case makes clear that the preelection registration requirement in California, although neutral on its face and seemingly innocuous, has the practical effect, at least in Los Angeles County, of resulting in a denial of the right to vote to many citizens who want to vote on election day and that this practical effect impacts most seriously upon the poor and minorities.

---

* Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

The Legislature, obviously aware of the economic and racial impact of the preelection registration requirement, has enjoined upon the counties the administrative duties to maintain registration at the highest possible level, to design and implement programs intended to identify qualified electors who are not registered voters, and to register such persons to vote. (Elec. Code, § 304.)[1] To accomplish those goals, the Legislature has given the boards of supervisors of the counties extensive discretionary powers, including the power to deputize any of its officers and employees as registrars. (§ 302.) Notwithstanding the specially enjoined duties, the Board of Supervisors of the County of Los Angeles decided to stonewall. It refused to design and implement a program intended to identify qualified electors who were not registered voters, and thus did not attempt to register those persons.

Based on overwhelming evidence, the trial court found a significant class of underregistered, eligible low-income and non-White citizens. In some of the towns and cities where the population was predominantly poor or non-White as many as 70 percent of the eligible voters were unregistered, whereas in wealthy White communities it was shown that only 10 to 15 percent of the eligible voters were not registered. Based on this showing, the trial court issued a preliminary injunction requiring the county to deputize as deputy registrars appropriate county employees having daily contact with eligible but unregistered voters. In short, the court said to the county that you cannot stonewall and temporarily, pending further proceedings, the county shall engage in a program to reduce the number of unregistered, qualified electors. There is nothing in the court's order to prevent the county from mending the error of its ways, investigating to determine which electors are effectively deprived of the franchise by the preelection registration requirement, and developing programs to increase registration.

The majority tell us that courts cannot compel the county to deputize its employees as registrars because the Legislature in section 302, subdivision (e) gave it discretion to determine whether to deputize its employees and that section 304 is applicable to the Secretary of State and does not impose a direct duty on the county. (Maj. opn. at pp. 443-445.) The majority also argue that the preliminary injunction was improper even if the county was acting unlawfully, and that the court should not act until it has given the county an opportunity to remedy the situation. (Maj. opn. at pp. 445-446.)

However, it is clear that the Legislature has established the legislative policy and imposed an administrative duty on the county, that while the county is given discretion in appointing its employees as deputy registrars,

---

[1] All statutory references are to the Elections Code unless otherwise indicated.

its discretion is not limitless, and that the courts have authority to correct its abuse of discretion. The county's stonewalling in refusing to implement a program to even identify the unregistered electors is a clear abuse of discretion, and the fact that the county is to act in accordance with the Secretary of State's regulations does not furnish a defense when it has violated them also.

Nor was the court required to delay attempts to remedy the situation. As shown by the main authority cited by the majority, the proper function of the court in matters as important as elections is to take temporary action to assure that they are conducted in accordance with law, while leaving the authorized agency free to devise a permanent solution in accordance with law. The preliminary injunction does not preclude the county from devising its own plan in accordance with the law and obviously is only a temporary measure.

The election process is so important to the maintenance of our democracy that abuses, whether they take the form of fraud or abuse of legislatively conferred discretion, must be addressed immediately. Although the record in the instant case of practical disenfranchisement of large numbers of poor and minorities by the preelection registration requirement draws into question the validity of the requirement itself, the trial court did not invalidate the process but sought to enforce the legislative attempts to square preelection registration requirements with the citizens' right to vote without economic or racial discrimination. Attempts ordained by the Legislature to modify the economic and racial effects of the preelection registration system must be enforced to maintain the integrity of the system.

It has long been recognized that county boards of supervisors exercise both administrative powers and duties and legislative powers. (E.g., *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612-615 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 129 et seq. [222 P.2d 225].) As a generalization, matters which affect numerous people are legislative in character. However, where the general policy is established by the Legislature, the county board's function in carrying out the policy by performing its duty is an administrative function delegated by the state. The determination whether the board's function is legislative or administrative may not always be easy, and one of the factors that is usually considered is the procedures established by the Legislature for the board. (*Ibid.*)

The statutory pattern is clear. In the area of elections, including registration of voters, probably more than any other area in the law and in recognition that our dedication to a democratic form of government is involved, the Legislature has acted comprehensively dotting the i's, crossing the t's and

directing county and local officials to enforce its policy determinations. (See Elections Code generally.) Turning to the specific code sections before us, the Legislature has specified its intent that registration be maintained at the highest possible level and directed the Secretary of State to adopt regulations requiring each county "to design and implement programs intended to identify qualified electors who are not registered voters, and to register such persons to vote." (§ 304.) The Secretary of State has adopted regulations. (Cal. Code Regs., tit. 2, § 20000 et seq.) Section 304 obviously requires counties to adopt outreach programs and does not permit the county board to ignore the directive. Indeed section 304 provides that the Secretary of State shall adopt regulations prescribing minimum "requirements" and continues by providing that if the "Secretary of State finds that a county has not designed and implemented a program meeting such prescribed minimum requirements, the Secretary of State shall design a program for such county."

The policy judgment as to whether a program shall be adopted has been made by the Legislature. The Legislature has required the Secretary of State to adopt regulations prescribing the minimum requirements, obviously an administrative function, since the Secretary of State is not given legislative powers. Although conceivably a county board of supervisors may be acting in a legislative capacity in adopting a program which goes beyond the Secretary of State's minimum requirements, a board is acting in an administrative capacity when it attempts to meet the minimum requirements. Moreover, the Legislature has provided that if a county fails to meet the minimum requirements, the Secretary of State may design a program for the county. Again, the Secretary of State is not a legislature.

The Secretary of State has adopted extensive regulations. (Cal. Code Regs., tit. 2, §§ 20000-20005.) California Code of Regulations, title 2, section 20000 provides that "all counties shall design and implement programs intended to identify qualified electors who are not registered voters, and to register such persons to vote, hereinafter referred to as outreach programs." California Code of Regulations, title 2, section 20001, subdivision (f) provides that each county voter outreach program shall provide for the solicitation of assistance from local government offices, including the incidental use of their premises and/or personnel for the purpose of outreach, and the offices to be solicited include those which in the opinion of the county clerk come into frequent contact with unregistered electors. And California Code of Regulations, title 2, section 20002 mandates each outreach program to "stress" the solicitation of voter registrations by persons whose activities place them in frequent contact with potential registrants. The Secretary of State's regulations specifies that affirmative and positive steps must be taken to attain the Legislature's goal. These provisions significantly directing the particular steps to be taken and providing discretion for the county clerk

further show the administrative character of the duty imposed by the Legislature by section 304.

The fact that section 302, subdivision (e) provides that counties "may" assign any of its officers and employees to become deputy registrars does not show that the county's power is a legislative one or that the Secretary of State or the courts may not require some employees to act as deputy registrars. The fact that the board of supervisors may exercise substantial discretion does not mean that it is not acting in an administrative capacity. For example, subdivision map approvals, variances and conditional use permits involve considerable discretion in applying the state established standards to the particular application but all are administrative determinations. (*Horn* v. *County of Ventura, supra,* 24 Cal.3d 605, 612-615; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 513-514 [113 Cal.Rptr. 836, 522 P.2d 12]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 74 [187 P.2d 686].) Whether acting under subdivision (e) of section 302 or any other provision in sections 302 and 304, the board of supervisors acts in administrative and not in a legislative or quasi-legislative capacity.[2]

Legislative history makes it clear that the "may" in subdivision (e) of section 302 should not be read as a limitation on the county's duty to adopt an outreach program under section 304. The provisions of subdivision (e) of section 302 were first added in 1965. (Stats. 1965, ch. 1866, § 1.) Obviously, they were found insufficient to fully accomplish the legislative purpose, and in 1975 the Legislature established the outreach program of section 304 (Stats. 1975, ch. 704, § 3.5), an additional program to accomplish the same purpose. Since subdivision (e) of section 302 and section 304 are both designed to increase voter registration and section 304 is designed to go beyond section 302, it would frustrate rather than further legislative intent to read subdivision (e) of section 302 as imposing an implied limitation on the duty imposed by section 304.

It has long been settled that while mandamus will not lie to control the discretion of administrative officials, it will lie to correct abuse of discretion of those officials. (E.g., *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344, fn. 24 [124 Cal.Rptr. 513, 540 P.2d 609]; *Griffin* v. *Board of Supervisors* (1963) 60 Cal.2d 318, 322 [33 Cal.Rptr. 101, 384 P.2d 421]; *Baldwin-Lima-Hamilton Corp.* v. *Superior Court* (1962) 208 Cal.App.2d 803, 823 [25 Cal.Rptr. 798]; *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543, 555-557 [314 P.2d 67]; see *Robbins* v. *Superior Court*

---

[2] The majority (maj. opn. at p. 445) mischaracterize the board's decisions under section 302, subdivision (e) as quasi-legislative.

(1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].) The discretion that is conferred on administrative officials is not an absolute discretion, but a discretion to be exercised in accordance with the purposes of the legislation. There can be no question but that in failing to take any steps to identify electors who are not registered, the board has violated section 304 and the Secretary of State's regulations. While the statute and the regulations confer on the board discretion as to the steps to be taken, the failure to take any steps constitutes an abuse of discretion. Similarly, while subdivision (e) of section 302 confers discretion upon the board with respect to appointment of employees and officials as deputy registrars in pursuance of the legislative goal to maintain registration at the highest level, and to register those identified as unregistered electors, the record before us shows a clear abuse of discretion. The board has not attempted to identify the unregistered electors and thus did not take any steps to register them. The board has not suggested any other programs to register them. In the circumstances, the trial court injunction requiring appointment of some employees as deputy registrars—with limited duties not interfering with their other duties—is a reasonable method to correct the abuse of discretion.

I conclude that the provision in section 302 providing that the county "may" deputize governmental employees does not establish an absolute right to refuse to deputize any, does not establish that the duty imposed by section 304 and the Secretary of State's regulation to establish an outreach program may not include a duty to deputize in the exercise of discretion, and does not preclude a court order requiring deputizing some county employees.

In concluding that courts may not compel counties to deputize any employees, the majority ignore the numerous cases which have recognized that courts may correct abuses of discretion of administrators.

The majority's reliance on *Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929] and *Legislature* v. *Reinecke* (1973) 10 Cal.3d 396 [110 Cal.Rptr. 718, 516 P.2d 6] is misplaced because those cases do not involve administrator's duties but legislative powers to establish a system of public school financing and to reapportion legislative and congressional districts. Moreover, the latter case makes clear that, even as to the exercise of legislative powers, courts may adopt temporary solutions when the Legislature has failed to act. Thus, when the Legislature failed to reapportion the congressional districts, this court proceeded to do so itself for the 1972 election providing that the Legislature could adopt its own redistricting plan for the 1974 election and that if it did not do so, the court would adopt a plan. (10 Cal.3d at p. 400; *Legislature* v. *Reinecke* (1972) 6 Cal.3d 595, 601 et seq. [99 Cal.Rptr. 481, 492 P.2d 385].) Similar procedure was

followed in this case. The trial court issued a preliminary injunction requiring the county to appoint some employees as deputy registrars. The injunction does not preclude the county from commencing its own outreach program to identify unregistered electors and to register those identified. Should the county comply with the law, it obviously is free to seek to have the preliminary injunction vacated. The temporary relief authorized herein is entirely consistent with the approach of *Legislature* v. *Reinecke, supra,* 10 Cal.3d 396. As there, the court was faced with upcoming elections and acted to protect the integrity of the electoral process.

At the trial, plaintiffs established that the proposed preliminary injunction would not impose great burdens on the county and that it would significantly reduce the imbalances in voter registration existing in the county. Although the county claimed that there were significant burdens, it was unable to establish the claim. When the hearing comes on for the permanent injunction, the county, of course, will be able to show how burdensome the preliminary injunction is and whether it is effective.

I would affirm the judgment of the Court of Appeal.

Mosk, J., concurred.