Opinion
 

 SMITH, Acting P. J.
 

 This is an appeal by T.R.E.E.S. (Timber Resources Environmental Education Service, an unincorporated association) from a judgment of dismissal entered after the superior court sustained, without leave to amend, demurrers by the California Department of Forestry and Fire Protection (department) and Louisiana-Pacific Corporation (L-P) to T.R.E.E.S.*s third amended petition for writ of mandate and complaint for injunctive relief. We will affirm.
 

 Background
 

 The controversy concerns a timber harvesting plan submitted by L-P under the Z’berg-Nejedly Forest Practice Act of 1973 (Act or Forest Practice Act) (Pub. Resources Code, § 4511 et seq. as amended; all further section references are to that code unless indicated otherwise). The department first approved the plan (THP 1-87-170) in April 1987. It approved minor amendments to it in September and November 1988 and March 1989, and a major amendment on May 12, 1989—all of them proposed by L-P.
 

 T.R.E.E.S. filed an original verified petition and complaint on August 2, 1989, after one of its members, Helen Libeu, allegedly wrote in June asking the department to require another major amendment but was denied the request by letter on July 3, 1989. At issue was whether L-P’s plan was being executed in a way which involved unapproved hardwood harvesting.
 

 Demurrers by the department and L-P to a first amended pleading were sustained with 10 days leave to amend. T.R.E.E.S. filed a second amended pleading on December 6, 1989, within 10 days of the formal order of November 29. It then filed a third amended pleading on February 7, 1990,
 
 *649
 
 although without leave of court, and a new round of demurrers resulted in the order and dismissal challenged on this appeal.
 
 [1]
 

 Discussion
 

 The demurrers were granted for failure to state a cause of action. In reviewing the sufficiency of a pleading against a general demurrer, we treat the demurrer as admitting all material facts properly pleaded—though not contentions, deductions or conclusions of fact or law. The issue is whether the pleading, so viewed, states facts sufficient to constitute a cause of action.
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We do not concern ourselves with possible difficulties of proof, only with whether the pleaded facts show that the pleader may be entitled to some relief.
 
 (Alcorn
 
 v.
 
 Anbro
 
 Engineering,
 
 Inc.
 
 (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) No issue is raised here as to the propriety of the superior court denying leave to amend.
 

 The third amended petition and complaint is cast in two causes of action, each drawing on common factual allegations that the department refused to withdraw approval of the timber harvesting plan despite a demand by Helen Libeu to do so. The first cause of action, claiming violations of both the Forest Practice Act and the California Environmental Quality Act (CEQA) (§ 21000 et seq.), alleges that the department on July 3, 1989, refused Libeu’s written request to “require a ‘major amendment’ ” to the plan based on her discovery that harvesting being carried out under the plan included “the substantial harvesting of Group B species (hardwoods), while the original plan approval was only for conifers.” The refusal is a claimed “abuse of discretion” by the department because it resulted in various environmental impacts not being evaluated.
 

 The second cause of action alleges that the refusal constituted a failure to perform a mandatory duty under the Act and its implementing rules and regulations (Cal. Code Regs., tit. 14, § 895 et seq. (hereafter Forestry Rules)), rendering the department liable in damages for negligence under Government Code section 815.6.
 
 [2]
 

 
 *650
 
 Correctly discerning that both causes of action hinged on whether the department was under a mandatory duty to require amendments at the urging of members of the public, the superior court held that no such duty exists. We agree.
 

 I
 

 A brief overview of the Forest Practice Act helps frame the duty issue. The Act’s provisions, together with implementing rules and regulations promulgated by the State Board of Forestry (board) (§§ 4521.3, 4551), provide a comprehensive scheme regulating timber operations in a way which promotes the legislative “goal of [achieving] maximum sustained production of high-quality timber products . . . while giving consideration to values relating to recreation, watershed, wildlife, range and forage, fisheries, regional economic vitality, employment, and aesthetic enjoyment” (§§ 4513, subd. (b), 4512, subd. (c)). The heart of the scheme is its requirement that logging be carried out only in conformance with a timber harvesting plan (THP or plan) submitted by the timber owner or operator and approved by the department after determining, with an opportunity for input from state and county agencies and the general public, that the proposed operations conform to the Act and rules and regulations. (§§ 4581-4582.75, 4583;
 
 Laupheimer
 
 v.
 
 State of California
 
 (1988) 200 Cal.App.3d 440, 449 [246 Cal.Rptr. 82];
 
 Environmental Protection Information Center, Inc.
 
 v.
 
 Johnson
 
 (1985) 170 Cal.App.3d 604, 610-611 [216 CaERptr. 502] (hereafter
 
 EPIC).)
 

 Since 1976, the THP preparation and approval process developed under the Act has been certified as the functional equivalent to, and hence an adequate substitute for, the full environmental impact report (EIR) process required by CEQA.
 
 (EPIC, supra,
 
 170 Cal.App.3d 604, 611-612;
 
 Laupheimer
 
 v.
 
 State of California, supra,
 
 200 Cal.App.3d 440, 458; § 21080.5.) One important procedural consequence is that court challenges to department action under the Act must be “commenced no later than 30 days from the date of the filing of notice of the approval or adoption of the activity” (§ 21080.5, subd. (g)) rather than within the limits prescribed in CEQA (§ 21167).
 
 (EPIC, supra,
 
 170 Cal.App.3d at pp. 617-618; § 21080.5, subd. (c).)
 

 
 *651
 
 A THP may be effective for up to three years. (§ 4590; Forestry Rules, § 1039.1.) Amendments proposing changes to it may be submitted to the Director of Forestry (director), and any “[substantial deviations” from the original plan may be undertaken only after an amendment has been filed with and acted upon by the director in the same manner required for an original plan (§ 4591; Forestry Rules, §§ 895.1 [defining director], 1036, 1039).
 

 Violations of the Act or regulations subject the violator to a broad range of penalties and enforcement remedies, including misdemeanor fines and/or imprisonment for each day of violation (§ 4601). The department has authority to conduct on-site inspections (§ 4604), and its inspecting officers may issue stop orders to temporarily suspend operations while judicial remedies are sought (§ 4602.5, subds. (a), (b)). The department “may bring an action” to enjoin actual or threatened violations (§ 4605); the court may halt operations pending compliance and corrective action and may condition their resumption on written agreements between the department and the violator insuring such action (§§ 4606-4607); the Attorney General “may, on his own motion or at the request of the board,” also bring an enforcement action (§ 4603).
 

 Finally, of special importance to this appeal, “Any person may commence an action on his own behalf against the board or the department for a writ of mandate pursuant to [Code of Civil Procedure section 1084 et seq.] to compel the board or the department to carry out
 
 any duty imposed upon them under the provisions of this
 
 chapter.” (§ 4514.5, italics added.) “ ‘Person’ includes any private individual, organization, partnership, corporation, city, county, district, or the state or any department or agency thereof.” (§ 4525.)
 

 II
 

 The importance of T.R.E.E.S showing a mandatory or ministerial duty is evident from section 4514.5, quoted above, and from general law governing the mandate provisions cited therein (Code Civ. Proc., § 1084 et seq.). Mandate lies only “to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .” (Code Civ. Proc., § 1085.) Specifically, a petitioner must show (1) a clear, present and usually ministerial duty on the respondent’s part plus (2) a clear, present and beneficial right in the petitioner to the performance of that duty.
 
 (Loder
 
 v.
 
 Municipal Court
 
 (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624].) Mandate usually will not lie to compel an exercise of
 
 *652
 
 discretion.
 
 (Common Cause
 
 v.
 
 Board of Supervisors
 
 (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610].)
 

 In urging that the department has a duty under the Act to demand a plan amendment, T.R.E.E.S. relies on this language in section 4591: “Amendments to the original timber harvesting plan may be submitted detailing proposed changes from the original plan. Substantial deviations from the original plan shall not be undertaken until the amendment has been filed with, and acted upon, by the department in accordance with Sections 4582.7 and 4583” governing original plan approvals. T.R.E.E.S. also relies on parallel language in Forestry Rules section 1039: “Amendments proposing substantial deviation from an original plan shall be submitted to the Director in writing by the person who submitted the original plan, or the successor in interest. Substantial deviations shall not be undertaken until such amendment has been filed and acted upon by the Director in the manner as required in Article 2 of Subchapter 7 of these rules for the original plan.”
 

 Neither provision establishes a departmental duty to compel the submission of amendments. They establish only that the plan holder—i.e., the owner or operator who submitted the original plan (see §§ 4581-4582)— “may” (§ 4591) or in the rule’s terms “shall” (Forestry Rules, § 1039) submit an amendment if the plan holder
 
 proposes
 
 substantial deviations from the scope of the original approved plan. Such deviations then “shall not be undertaken” (§ 4591; Forestry Rules, § 1039) until approved by the department or its director.
 

 That the plan holder “shall” not undertake deviations without prior approval hardly connotes a duty
 
 on the department
 
 to demand (or propose) the amendment. The duty is
 
 on the plan holder
 
 to submit one and get approval, or else risk the Act’s penalties and other coercive enforcement mechanisms. Section 4581, which similarly requires that an operator or owner “shall” not conduct operations “unless” a THP has been submitted to the department, likewise places the burden to propose an
 
 original
 
 plan on the harvester, not the department. This is not to say that the department lacks
 
 discretion
 
 to
 
 suggest
 
 an amendment as part of corrective action (see §§ 4602.5, 4606) or perhaps even as a condition for initial THP approval. That differs, however, from a
 
 duty to compel
 
 an amendment.
 

 The Act clearly spells out the department’s options should it discover that operations are undertaken in violation of an approved plan (§ 4601 et seq.), and compelling amendments is not among those options. The only “duty” on the department is to determine that an amendment,
 
 if
 
 submitted, complies
 
 *653
 
 with the Act and Forestry Rules. (See also § 4593.8 [amendment of an approved plan by a nonindustrial tree farmer].)
 

 We note that T.R.E.E.S. did not plead any duty by the department to
 
 enforce compliance
 
 after the asserted deviations were called to its attention (and we express no view on that possibility). The remedy it sought was to have the department compel an amendment, which effort was misguided.
 

 Our conclusion that the Act imposes no duty to require a plan amendment also disposes of T.R.E.E.S.’s attempt to plead that the department was liable in damages under Government Code section 815.6 for negligent failure to require the amendment. That provision similarly requires a “mandatory duty” imposed by enactment. (See fn. 2,
 
 ante.) A
 
 second obvious flaw in that cause of action is that T.R.E.E.S. failed to plead that it presented a timely claim against the state. (Gov. Code, §§ 905.2, 945.4.) We need not address other arguments on this subject.
 

 Ill
 

 The superior court also concluded that T.R.E.E.S.’s claims were time barred under the 30-day provision of section 21080.5, subdivision (g), to the extent that the action sought withdrawal of department approval. Considerable briefing on appeal is devoted to that question and to variations of it. However, there being no duty and hence no cause of action to accrue, the question is obviously moot and need not be reached.
 

 Disposition
 

 The judgment is affirmed.
 

 Benson, J„ and Peterson, J., concurred.
 

 [1]
 

 In sustaining the demurrers, the court granted leave, nunc pro tunc, for T.R.E.E.S. to file the third amended pleading, thus curing the problem and rejecting a motion to strike brought on lack-of-leave grounds. L-P’s argument that the late filing is an alternative ground for affirmance, while not necessary to reach, is odd since neither abuse of discretion nor prejudice from the nunc pro tunc order is claimed.
 

 [2]
 

 Government Code section 815.6, part of the Tort Claims Act, provides: “Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against
 
 *650
 
 the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.”
 

 Although involving a disputed factual issue and thus not directly relevant to review of the demurrer, we note for sake of completeness that the department took the view, in response to Libeu’s letter, that the timber harvest plan
 
 did
 
 encompass hardwoods harvesting.