Filed 9/25/19; Opinion following rehearing
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE ex rel. STATE DEPARTMENT OF STATE HOSPITALS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.M.,<br><br>    Defendant and Appellant, | 2d Crim. No. B292131<br>(Super. Ct. No. 16MH-0062)<br>(San Luis Obispo County)<br><br><br>OPINION ON REHEARING |

      The Mentally Disordered Offender (MDO) Act (Pen. Code, § 2960 et seq.)[1] "permits the government to civilly commit for mental health treatment certain classes of state prisoners during and after parole." (*In re Qawi* (2004) 32 Cal.4th 1, 23.) In 2014 S.M. was adjudicated an MDO and committed for treatment to the Department of State Hospitals (the Department). He appeals from an order that he "be involuntarily administered antipsychotic medication by the Department . . . in the dosage

_____

[1] Unless otherwise stated, all statutory references are to the Penal Code.

and for the frequency deemed necessary by the Department," not to exceed a period of one year.  The order was made because appellant lacks the capacity to refuse medical treatment with antipsychotic drugs.  In nonemergency situations, "an MDO can be compelled to be treated with antipsychotic medication" only if "(1) he is determined by a court to be incompetent to refuse medical treatment; [or] (2) the MDO is determined by a court to be a danger to others within the meaning of Welfare and Institutions Code section 5300." (*Id*. at p. 27.)

The involuntary medication order is a renewal of a prior order that expired in 2018.  In an unpublished opinion, we affirmed the prior order.  (*People v. S.M.* (April 19, 2018, B282195) [nonpub. opn.].)

Appellant contends that (1) the Department lacked standing to petition to renew the involuntary medication order; (2) he was denied his statutory right to represent himself; (3) because of a discovery violation, the expert testimony of appellant's current treating psychiatrist should have been excluded; and (4) the trial court abused its discretion in admitting the opinion of a non-testifying psychiatrist.  We affirm.

*Facts*

Two psychiatrists testified for the Department:  Drs. Joshua Deane and Jonathan Funk.  Dr. Deane is appellant's current treating psychiatrist.  He concluded that appellant suffers from schizophrenia characterized by paranoia, delusions, and disorganization.  Dr. Deane opined that appellant "cannot even appreciate the fact that he is a very impaired individual. . . . And he certainly does not see the impact of his mental illness o[n] his life . . . [and] he is not able to appreciate the . . . benefit of medication."  When asked if appellant had "the capacity to make

2

decisions regarding administration of antipsychotic medication," Dr. Deane replied: "No, he does not. He is too disorganized, illogical and cannot have a . . . basic understanding of the fact that he has a mental illness . . . . Given the fact that he does not even think that he has [a] mental illness, he certainly does not see a need for medication treatment . . . ." Dr. Deane continued: "[H]e suffers from schizophrenia. And the very nature of this illness dictates that he needs medication treatment, and in addition . . . he has been a violent individual. So for that reason he needs to be medicated."

Dr. Funk was appellant's treating psychiatrist for about nine months in 2017-2018. Dr. Funk testified: Appellant has schizophrenia, characterized by "delusions and thought disorder." He has "a history of refusing medications." "[H]e does not believe that he has a mental illness." He is not "able to understand and rationally evaluate and participate in the treatment decision." "[H]is appreciation of facts is impaired by his mental illness." There are "numerous episodes where [appellant] asserts things that reality testing demonstrates are a product of his mental illness." Examples of his delusional thinking are that "he had achieved . . . advanced degrees from Pepperdine University at age four, and that he had been kidnapped and rescued at age 13." He lacks "the capacity to make decisions regarding administration of antipsychotic medication." He will not take his medication "without an involuntary medication order."

Appellant testified that he was not mentally ill and did not have delusions. He was being involuntarily medicated "as a punishment to make you sluggish and want to sleep all the time."

Daniel Summersdrager, a registered nurse at Atascadero State Hospital, was called as a witness on appellant's behalf. He

provided no relevant evidence as to appellant's capacity to refuse treatment with antipsychotic drugs.

*Standing*

Appellant contends that the Department lacked "standing to file and prosecute the petition" to renew the prior order authorizing it to involuntarily administer antipsychotic medication. Appellant claims that the petition should have been filed by the District Attorney: "The MDO law does not permit [the Department] to circumvent the process of referring a recommendation for treatment issues to the district attorney, and to jump in the saddle and file a petition with its own team of lawyers . . . ."

Appellant argues that the District Attorney is the proper person to file and litigate the petition because "[t]he District Attorney is specified as the attorney who litigates MDO commitments and recommitments (Pen. Code, §§ 2966, subd. (b); 2970, subd. (b)[; 2972, subd. (b)]) . . . ." But the order appealed from does not involve appellant's commitment or recommitment as an MDO. It involves his medical treatment during his commitment or recommitment. The Legislature intended that the Department be responsible for such treatment. Section 2972, subdivision (f) provides: "Any commitment under this article places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder."

Appellant claims that, "[b]y [the Department's] taking on a *prosecution role*, appellant [was] deprived of the necessary layer of overview required in the role of a disinterested prosecutor resulting in a violation of his state and federal rights to due process and a fair proceeding." (Italics added.) The Department

4

did not take on a "prosecution role." Appellant was not charged with a public offense. (See Gov. Code, § 26500 ["The district attorney is the public prosecutor" who "within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses"].) There is nothing prosecutorial in a proceeding to determine whether an MDO committed to the Department for treatment should be involuntarily administered antipsychotic medication as part of that treatment. The following statement in appellant's brief borders on the absurd: "To allow the state hospital to prosecute an involuntary treatment proceeding . . . is akin to allowing the police to circumvent the process of submitting a case [to] the District Attorney for prosecution, and hire its own lawyers to prosecute any case it wished."

Moreover, the district attorney's office lacked the expertise and understanding of appellant's mental condition to oversee the Department's decision to involuntarily administer antipsychotic medication. A representative from the district attorney's office stated in open court: "I don't believe . . . that the District Attorney's Office has any standing or purpose in [appellant's] situation. It's quite clear that the safety both for [appellant] and for fellow peers as well as the staff, is clearly within the . . . best understanding of the personnel of the Department of State Hospitals. . . . [¶] . . . [¶]  I can't understand how our office could do anything any differently when we have medical professionals coming forward and saying we have a situation where we feel someone should be subject to an involuntary medication order. . . . So it's very clear that our office would not act in any way differently than the Department . . . ."

5

Since the MDO law vests the Department with responsibility for appellant's treatment, the Department has standing to petition for an order authorizing its treatment to include the involuntary administration of antipsychotic medication. "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.]" (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439.) That purpose is satisfied here. The California Code of Regulations recognizes the Department's standing. It provides that "[t]he state hospital shall request a court hearing as required by law" to determine whether the legal standard has been met to involuntarily administer antipsychotic medication to an MDO. (Cal. Code Regs., tit. 9, § 4210, subd. (q).)

*Right to Self-representation*

Appellant argues that the trial court erroneously denied his motion for self-representation. Appellant said: "I would like to represent myself. I imagine I will have the same problem with new counsel. They would be unwilling to call witnesses I require." His appointed counsel declared, "He mentioned one witness at the hospital. . . . I didn't think it was worth subpoenaing him. I didn't think he was helpful."

At the hearing on the motion for self-representation, appellant denied that he was suffering from a mental illness. However, he appeared to be delusional. He told the court that in October 1979 he "and the LAPD SWAT team" killed "three kidnappers," the event "was reported to the country by Walter Cronkite on the Saturday Evening News," and "President Carter

6

called [him] the next day and talked about the kidnapping." At the time of the alleged kidnapping, appellant was 13 years old.

In denying appellant's motion for self-representation, the trial court explained, "I do believe that you suffer from delusions, and I believe those and your mental illness will impair you from representing yourself." On the other hand, the court found appellant to be "a very intelligent person" with "some understanding of the law." The court further found that appellant understood "what's being charged, what this petition means and what the effects of that petition would be."

After denying the motion for self-representation, the trial court granted appellant's *Marsden* motion and appointed new counsel to represent him. (*People v. Marsden* (1970) 2 Cal.3d 118.)

"[B]ecause MDO proceedings are not punitive in nature they are considered civil proceedings, and therefore there is no *constitutional* right to self-representation. However, as the MDO commitment statutes give defendants the right to appointed counsel, a defendant also could refuse counsel and represent him- or herself. The right only being statutory, any denial of a request to represent oneself is governed by due process principles and the decision is reviewed for an abuse of discretion." (*People v. Williams* (2003) 110 Cal.App.4th 1577, 1588 (*Williams*); see also *id.* at p. 1591 ["The statute expressly gives the right to counsel to defendants in MDO proceedings and surely they have by implication the right to refuse appointed counsel and represent themselves"].) "Because the right to counsel in MDO proceedings is a statutory, not constitutional right, we will reverse [for an abuse of discretion] only if it is more probable than not that [appellant] would have received a better

7

result had he been allowed to represent himself. [Citation.]" (*Id*. at pp. 1592-1593.)

The Department concedes that "appellant has a statutory right to counsel, and thus a statutory right to self-representation." The Department asserts, "This Court should review the trial court's denial of appellant's self-representation motion for abuse of discretion and apply the *Watson* harmless error standard of review." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

In *People v. Johnson* (2012) 53 Cal.4th 519, 530, our Supreme Court held that, when a criminal defendant with mental health issues seeks to exercise his federal constitutional right to represent himself, "the standard that trial courts . . . should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." It has not been determined whether this standard applies when an MDO seeks to exercise his statutory right to represent himself.

We need not decide whether the trial court abused its discretion in denying appellant's motion to represent himself. If the court had abused its discretion, it is not reasonably probable that appellant would have received a better result had he been allowed to represent himself. Appellant told the court that he wanted to represent himself because his appointed counsel was "unwilling to call witnesses I require." During the *Marsden* hearing after the trial court had denied his motion for self-representation, appellant said that he wanted to call two witnesses - Dr. Funk and Daniel Summersdrager. Both witnesses testified at the hearing on the Department's petition.

8

Appellant does not claim that counsel's performance was deficient. Nor does he claim that he would have provided different or additional evidence or advanced a new theory had he been permitted to represent himself. No mental health professional disputed the opinions of Drs. Deane and Funk that, because of his mental illness, appellant lacked the capacity to refuse medical treatment with antipsychotic drugs. Appellant "presented no evidence, other than his own self-serving denial that he suffered from a mental illness, to counter these opinions." (*Williams*, *supra*, 110 Cal.App.4th at p. 1593.) Appellant does not suggest anything that counsel could have done differently to show that he had the capacity to refuse medication.

Appellant asserts that "the erroneous denial of [his] request to represent himself is a structural error, requiring reversal." He relies on *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*). There, our Supreme Court held that, before conducting a bench trial to extend an MDO commitment, the trial court generally "must advise the MDO defendant personally of his or her right to a jury trial and . . . must obtain a personal waiver of that right from the defendant." (*Id*. at p. 1116.) The court further held: "In an MDO commitment proceeding, as in a criminal trial, the 'jury guarantee' is a basic protection 'whose precise effects are unmeasurable' and whose denial 'def[ies] analysis by "harmless-error" standards.' [Citation.] Accordingly, the total deprivation of a jury trial without a valid waiver in an MDO commitment proceeding requires automatic reversal." (*Id*. at p. 1135.) The court noted that MDO commitment "proceedings threaten the possibility of lasting stigma and a significant deprivation of liberty." (*Id*. at p. 1134.)

9

*Blackburn* is distinguishable. Appellant was not deprived of his statutory right to a jury trial in an MDO commitment proceeding. He had already been lawfully committed. He allegedly was deprived of his statutory right to represent himself in a proceeding to determine whether, during his commitment, the Department could involuntarily medicate him with antipsychotic drugs. The deprivation of this right does not necessarily defy "'analysis by "harmless-error" standards.'" (*Blackburn*, *supra*, 61 Cal.4th at p. 1135.) Thus, the trial court's alleged error is not structural.

*Alleged Discovery Violation*

Dr. Deane is appellant's current treating psychiatrist. Appellant maintains that he was denied his due process right to cross-examine Dr. Deane regarding his testimony as an expert (not as a treating psychiatrist or percipient witness) because the Department had failed to provide discovery of Dr. Deane's notes. Appellant asserts, "Deane's testimony as an 'expert' should have been excluded." "Although the MDO statutes are placed in the Penal Code, the superior court hearing is civil in nature, and the rules of both civil and criminal discovery apply. [Citations.]" (*People v. Stevens* (2015) 62 Cal.4th 325, 332; see § 2972, subd. (a).)

Appellant's counsel told the court, "I haven't been given anything in terms of [Dr. Deane's] notes, which I specifically requested. . . . [I]f [Dr. Deane testifies, his testimony] should be limited to [his] role as percipient witness[], because I have not received any discovery that would justify [him] being called as [an] expert[]." The Department's counsel responded: "Dr. Deane actually has been a treating psychiatrist for the past two weeks approximately. . . . He said he has a personal knowledge and he

10

doesn't have to bring anything because he actually sat down with [appellant], and he's going to just testify on those matters." The Department's counsel did not "think" that Dr. Deane had prepared a report "[b]ecause he's recently been assigned as [appellant's treating] psychiatrist."

The trial court offered to grant a continuance of the hearing so that appellant could discover Dr. Deane's notes: "[I]f you want a continuance, I would grant a continuance. I'm not going to limit or prevent [his] testimony today." "I would like to hear his opinion as a psychiatrist and as the treating psychiatrist."

Appellant did not ask for a continuance. Instead, his counsel said, "Okay. . . . [I]f it appears that [Dr. Deane is] testifying from notes, I'm going to want to see those during the proceeding, . . . I'm taking [his] word[] if [he is] not going to be using notes . . . ." The Department's attorney responded, "I have no objection to that, your honor." The court stated: "Okay. If there are relevant notes, we'll take a look at that."

An expert witness's notes may be discoverable. (See *Hines v. Superior Court* (1993) 20 Cal.App.4th 1818, 1822; *People v. Lamb* (2006) 136 Cal.App.4th 575, 580.) "Failing to respond or to submit to an authorized method of discovery" is a "[m]isuse[] of the discovery process." (Code Civ. Proc., § 2023.010, subd. (d).) For a misuse of the discovery process, the court "may impose an evidence sanction by an order prohibiting [the offending] party . . . from introducing designated matters in evidence." (*Id*., § 2023.030, subd. (c).) "'Imposition of sanctions for misuse of discovery lies within the trial court's discretion, and is reviewed only for abuse.' [Citation.]" (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1516; accord, *People v. Ayala* (2000) 23 Cal.4th 225, 299.)

11

The trial court did not abuse its discretion in offering appellant a continuance instead of excluding Dr. Deane's testimony as an expert. "'[If] the truth is to be served, the failure to disclose, at least where not wilful, should not be punished by the suppression of evidence, but by giving the offended party a proper opportunity to meet the new evidence. . . .' [Citation.] Here the trial court offered [ ] [appellant] a continuance in order [ ] to prepare to meet [Dr. Deane's] testimony [as an expert]. This was the proper procedure." (*People v. Reyes* (1974) 12 Cal.3d 486, 502.) "[T]he usual remedy for noncompliance with a discovery order [or, as here, a request] is not suppression of evidence, but a continuance. [Citation.]" (*People v. Robbins* (1988) 45 Cal.3d 867, 884, superseded by statute on other grounds as noted in *People v. Jennings* (1991) 53 Cal.3d 334, 387, fn. 13.)

Because appellant did not accept the trial court's offer to grant a continuance, he cannot establish prejudice and therefore cannot show a denial of due process. In *People v. Pinholster* (1992) 1 Cal.4th 865, the defendant claimed that he had been prejudiced by the late disclosure of a prosecution witness. In rejecting the claim, our Supreme Court reasoned: "The court gave defendant ample time to investigate once the witness and his proposed testimony were disclosed. The court said: 'I'll give you as much time as you want. You name it, you've got it. Investigate it fully, research it fully.' The defense requested no continuance. It is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm. [Citation.]" (*Id*. at p. 941, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.) Appellant has not carried his burden under *Pinholster*.

Appellant argues, "A continuance would not have resolved the problem because of the trial court's ruling that Dr. Deane could testify as an expert without complying with pre-trial [discovery] requirements applicable to experts." The trial court did not so rule. It said, "I'm not going to limit or prevent [Dr. Deane's] testimony *today*." (Italics added.) The trial court did not say that, if the hearing were continued to another day, it would permit Dr. Deane to testify as an expert even if he failed to provide discoverable notes.

Appellant asserts: "[F]or every [past] continuance of the proceedings, the time for involuntarily drugging [him had been] extended. . . . A person should not be forced to cho[o]se between being subject to extended involuntary medication and a fair opportunity to cross-examine witnesses." But appellant could have requested that he not be involuntarily medicated during the period of the continuance necessary to discover Dr. Deane's notes. Since appellant did not make this request, we do not know how the trial court would have ruled.

*Admission of Opinion of Non-testifying Psychiatrist*

Appellant argues that, during the direct examination of Dr. Deane, the trial court abused its discretion in admitting the opinion of a non-testifying psychiatrist. While answering a question asking him to "elaborate" on appellant's "history of refusing medications," Dr. Deane testified, "I noticed that on January 6th, 2016, . . . his treating psychiatrist changed his diagnosis from delusional disorder to schizophrenia. Because she at that time witnessed the disorganization, odd behaviors, which merit[] the change of diagnosis." Appellant's counsel objected on the ground that "testifying doctors are not allowed to testify to the opinions of other doctors that are not present." Dr. Deane

13

said that the rationale for the change of diagnosis is in appellant's medical records and is "relevant [to] my daily work with him." The trial court overruled the objection. It reasoned: "This is the kind of information that is relied upon regularly by doctors to assess patients, make their own diagnosis."

In support of his claim that the trial court erred, appellant cites the following excerpt from this court's opinion in *People v. Campos* (1995) 32 Cal.App.4th 304, 307-308 (*Campos*): "Psychiatrists, like other expert witnesses, are entitled to rely upon reliable hearsay, including the statements of . . . other treating professionals, in forming their opinion concerning a patient's mental state. [Citations.] On direct examination, the expert witness may state the reasons for his or her opinion, and testify that reports prepared by other experts were a basis for that opinion. [Citation.] [¶] *An expert witness may not, on direct examination, reveal the content of reports prepared or opinions expressed by nontestifying experts.* ""The reason for this is obvious. The opportunity of cross-examining the other doctors as to the basis for their opinion, etc., is denied the party as to whom the testimony is adverse."" [Citations.]" (Italics added.)

"While the italicized language [in the above excerpt from *Campos*] would suggest that no expert could ever refer during direct examination to the contents of another expert's report, . . . *Campos* cannot be read for such a broad prohibition. *Campos* . . . [was] concerned with preventing the introduction of multiple opinions, insulated from cross-examination, into evidence. Since this concern does not arise unless the expert is relying on other expert opinions, the reasoning of [*Campos*] is confined to that situation." (*People v. Bordelon* (2008) 162 Cal.App.4th 1311,

1326; accord, *People v. Miller* (2014) 231 Cal.App.4th 1301, 1313, fn. 8.)

The Department contends that *Campos* is inapplicable because Dr. Deane did not indicate that he was relying on the opinion of the prior treating psychiatrist: "Dr. Deane testified as to appellant's behaviors and change in diagnosis in 2016 in the context of appellant's history of refusing medication . . . ."

We need not decide whether the trial court erred in overruling appellant's objection. If it erred, the reference to the January 6, 2016 change of diagnosis and rationale for the change was "not prejudicial. The[] reference[] consumed only a small portion of [Dr. Deane's] . . . testimony. The remainder of [his] . . . expert testimony [together with Dr. Funk's testimony] easily supports the [trial court's] determination that appellant [lacked the capacity to refuse medication with antipsychotic drugs]. There was no miscarriage of justice. It is not reasonably probable that a result more favorable to appellant would have been reached in the absence of this evidence. [Citations.]" (*Campos*, *supra*, 32 Cal.App.4th at pp. 308-309.)

*Disposition*

The order that appellant be involuntarily administered antipsychotic medication is affirmed.

UNDERLINE CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

15

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Cheryl Feiner, Acting Snr. Assistant Attorney General, Leslie P. McElroy, Supervising Deputy Attorney General, Cristina M. Matsushima, Mary R. Conklin, Deputy Attorneys General, for Plaintiff and Respondent.