[No. G033652. Fourth Dist., Div. Three. May 12, 2004.]

VICTORIA S., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties In
Interest.

COUNSEL

Deborah W. Kwast, Public Defender, James Steinberg, Assistant Public Defender, Dennis Nolan and Paul T. DeQuattro, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Benjamin P. de Mayo, County Counsel, and Paula A. Whaley, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Craig E. Arthur for Real Party in Interest the Minor.

OPINION

**O'LEARY, J.**—Pursuant to California Rules of Court, rule 39.1B, Victoria S. seeks review of the order made at the permanency review hearing (Welf. &

Inst. Code, § 366.22, hereafter 18-month review hearing),[1] scheduling a permanency planning hearing for her daughter, Kayla S. (§ 366.26, hereafter .26 hearing). She contends the court should have bypassed the .26 hearing and ordered a permanent plan of long-term foster care at the 18-month review hearing. We find no error and deny her petition.

## FACTS

Kayla, then 14 years old, was taken into protective custody in August 2002, due to her mother's failure to protect and inability to provide support. Victoria, who had a long history of substance abuse, was incarcerated at the time. Kayla's father and Victoria were divorced. The father already had custody of two of the couple's children and a third, taken into custody at the same time as Kayla, was placed with him. Kayla was also placed with her father, but it soon became apparent he was unable to handle her. Kayla had become pregnant and had discipline problems.

In May 2003, Kayla was declared a dependent child. Reunification services were ordered for both parents. At the time, there was no appropriate placement for Kayla with any family member and Orange County Social Services Agency (SSA) intended to place her in Mary's Shelter, a program for pregnant teenagers. It planned to investigate a paternal aunt, with whom Kayla had resided at times in the past, as a possible placement.

Kayla's baby was born in June 2003. At the September 24, six-month review hearing, SSA reported Kayla was living at Mary's Shelter, and was progressing with her own parenting skills while doing very well in school. The parents needed to make progress with their case plan. The paternal aunt had obtained an apartment where Kayla and the baby could live with her, and SSA was preparing to evaluate the home. The court set an 18-month review hearing.

In its report for the 18-month review hearing, SSA recommended the court terminate services. The parents had not complied with the case plan. SSA noted Kayla was not adoptable, there was no legal guardian currently available. Kayla, who was now 16 years old, had moved in with her paternal aunt in October 2003, and she and her baby were doing very well. Kayla told the social worker she did not want to be adopted, unless it was by the aunt.

---

[1] All further statutory references are to the Welfare and Institutions Code.

The aunt was not interested in adopting, but said she would consider legal guardianship in the future. The report noted the aunt understood she could not qualify for KinGap (aid for legal guardians) until Kayla had been placed with her for one year. Accordingly, SSA initially recommended the court order Kayla into long-term foster care at the 18-month review hearing and not schedule "a .26 hearing at this time."

At the 18-month review hearing, SSA and Kayla's counsel stipulated to an order setting a .26 hearing and SSA would "assist caretaker with funding problems." Victoria's counsel submitted on the reports, waived cross-examination of the social worker, and made no argument at the hearing. The court found reasonable services had been provided and terminated services. It found there was a likely date by which Kayla might be placed for adoption or legal guardianship, set a .26 hearing, and ordered SSA to help the caretaker with funding issues.

## DISCUSSION

Victoria argues setting a .26 hearing was not in Kayla's best interests because she is not adoptable and there is no person willing to assume legal guardianship. We reject her argument.

If a child is not returned to his or her parent at the 18-month review hearing, the court "*shall* order that a hearing be held pursuant to Section 366.26 in order to determine whether adoption, guardianship, or long-term foster care is the most appropriate plan for the child. . . ." (§ 366.22, subd. (a), italics added.) There is one exception, upon which Victoria relies: "[I]f the court finds by clear and convincing evidence, based on the evidence already presented to it, . . . that there is a compelling reason, as described in paragraph (2) of subdivision (g) of Section 366.21, for determining that a hearing held under Section 366.26 is not in the best interest of the child because the child is not a proper subject for adoption and has no one willing to accept legal guardianship, then the court may, only under these circumstances, order that the child remain in long-term foster care. . . ." (§ 366.22, subd. (a).)

Victoria contends the evidence is clear and convincing that Kayla is not adoptable and no one is willing to assume legal guardianship. Therefore, she asserts, the court should have found a .26 hearing was not in Kayla's best interest and should have directly ordered that she remain in long-term foster care.

Victoria has waived her claim by failing to raise it below. (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1249 [98 Cal.Rptr.2d 844]; *In re Christopher B.*

(1996) 43 Cal.App.4th 551, 558 [51 Cal.Rptr.2d 43].) Although SSA's report recommended bypassing the .26 hearing, Victoria's counsel was aware at the hearing that SSA and Kayla's counsel stipulated to an order setting a .26 hearing. Nonetheless, counsel raised no objections to the order.

■ In any event, there was no error in the court's having ordered a .26 hearing. Section 366.22, subdivision (a) gives the court the discretion to bypass a .26 hearing only if it finds by *clear and convincing evidence*, the hearing is not in the child's best interest because he or she is not adoptable *and* no one is willing to accept legal guardianship. Here, it is not clear there is no one willing to assume legal guardianship. To the contrary, the implication from SSA's report and its subsequent stipulation to setting a .26 hearing is that the aunt might in fact be willing to assume legal guardianship if funding issues are resolved. Given that legal guardianship is preferable to long-term foster care as a permanent plan (§ 366.26, subd. (b)), in the absence of clear and convincing evidence such a plan would not come to fruition, it was necessary for the court to set a .26 hearing.

■ Furthermore, section 366.22, subdivision (a) does not mandate the court to bypass a .26 hearing. Rather, the statute provides that if the court finds a .26 is not in the child's best interest for the specific reasons listed, it "*may* . . . order that the child remain in long-term foster care." (§ 366.22, subd. (a), italics added.) The word "may" is usually construed as permissive (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610]), and there is no ambiguity about its meaning here—the Welfare and Institutions Code specifically provides the word is permissive. (See § 15 [" 'shall' is mandatory and 'may' is permissive"].)

Victoria criticizes the characterization of section 366.22, subdivision (a)'s authorization to bypass a .26 hearing as discretionary as "myopic", i.e., if the .26 hearing is not in the minor's best interests then the court *must* bypass the hearing for to do otherwise would be an abuse of discretion. There is no shortsightedness here. The Legislature plainly gave the court the discretion, but never an obligation, to dispense with a .26 hearing. The language at issue provides a means to bypass an evidentiary hearing, which is otherwise utilized by the court to evaluate and ascertain the proper permanent placement for a dependent child. In our view, such a hearing could never be dispensed with unless the particular bench officer presiding over the case were convinced an additional hearing to consider placement options could not affect his or her determination that long-term foster care is the only viable option. No matter how anyone else might assess the evidence, the juvenile court must ultimately render the judgment as to disposition. Consequently, that court alone is in the unique position of knowing whether it is prepared to reject the two preferred permanent options, adoption and guardianship,

without a .26 hearing. Should the court determine it cannot do so, forcing it to dispense with the hearing would be counterproductive.

And, of course, the juvenile court's decision to schedule a .26 hearing does not in any way rule out the possibility long-term foster care will be the ultimate disposition herein. That remains an option to be considered, along with adoption and guardianship. Assuming, as Victoria contends, the evidence clearly establishes Kayla is not suitable for adoption and guardianship is not an available option, then we can only presume that long-term foster care would be the ultimate disposition anyway. We have difficulty seeing how Victoria is aggrieved by the court's decision to hold the .26 hearing.

The petition is denied.

Sills, P. J., and Moore, J., concurred.