Filed 9/9/25  In re R.S. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.S., a Person Coming Under the Juvenile Court Law. | H052758 (Santa Cruz County Super. Ct. No. 24JU0163) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. M.S., Defendant and Appellant. | |

Under the Probate Code, a court may appoint a guardian for a child.  (Prob. Code, § 1514.)  Although a probate guardian becomes the child's legal caretaker and is entitled to many of the same rights as a parent (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 249-250 (*Merrick V.*)), a probate guardianship may be terminated when it is in the child's best interest to do so.  (Prob. Code, § 1601.)  Moreover, in a dependency proceeding, where a juvenile court considers whether to exercise jurisdiction because a child is in danger or has been left without support, the Welfare and Institutions Code grants juvenile courts express authority to terminate a probate guardianship.  (Welf. & Inst. Code, § 728, subd. (a).)  (Subsequent undesignated statutory references are to the Welfare and

Institutions Code.)  This appeal concerns when that authority may be exercised in relation to a dependency proceeding.

M.S. was appointed the probate guardian of R.S., a minor, in 2017.  In 2024, R.S. was hospitalized and treated for suicidal ideation.  When R.S. was ready for discharge, M.S. refused to pick him up or make alternative arrangements for him, and the Santa Cruz County Human Services Department (Department) filed a dependency petition.  Later, R.S. filed a motion to terminate M.S.'s guardianship.  After conducting a hearing on the motion, the juvenile court terminated M.S.'s guardianship and scheduled a hearing on whether to exercise dependency jurisdiction over R.S.

M.S. appeals, arguing that the trial court improperly terminated her probate guardianship before establishing dependency jurisdiction over R.S.  As explained below, based on the plain language of section 728, the Judicial Council's interpretation of that section in the Rules of Court, and the uniform view of the decisions considering this issue, we reject this argument and affirm the order terminating M.S.'s guardianship.

## I. BACKGROUND

R.S. was born in March 2008 in Haiti and spent almost the first half of his life there.  His mother is deceased, and his father unknown.  In 2016, M.S. brought R.S. to California, and the following year, she was appointed his probate guardian.

### A. Section 300 Petition

On August 29, 2024, the Department filed a petition under section 300 asking the juvenile court to exercise dependency jurisdiction over R.S., who was then 16 years old. The petition reported that from July 2020 through early August 2024, the Department received over a dozen referrals regarding R.S., including allegations of physical and emotional abuse, general neglect, and threats to return R.S. to Haiti, but each of these were determined to be unfounded or evaluated out.

The petition also alleged that on August 22, 2024 M.S. told R.S. that she had purchased a plane ticket to Haiti for him.  Afraid of returning there, R.S. ran away from

2

home, intending to jump off a bridge. However, after a car passed by him, R.S. contacted 911 and was hospitalized for suicidal ideation. R.S. reported that, in addition to threatening to send him to Haiti, M.S. had said that she did not care if he died and that she would be happy if he ran into traffic. R.S. also reported that on numerous occasions M.S. had locked him out of the house and told him to sleep outside.

On August 24, 2024, R.S. was ready to leave the hospital, and the Department notified M.S. of the anticipated discharge. However, M.S. refused to pick R.S. up or make alternative arrangements for his care, stating that she could not handle his behavioral issues and was contacting his extended family in Haiti in hopes of sending R.S. there.

Five days later, the Department filed the dependency petition alleging that R.S. should be treated as a dependent under section 300, subdivision (g) because he was left without any provision for support and his legal guardian was unwilling or unable to provide care and support for him.

### B. The Detention Hearing

On August 30, 2024, a day after the petition was filed, the juvenile court held an initial detention hearing. It found that the Department had made a prima facie showing that R.S. came within section 300 and detention was necessary. The Department then placed R.S. in a short-term residential therapeutic program and set a jurisdiction and disposition hearing. The hearing was originally set for October 1, 2024, but was continued until later that month.

### C. The Jurisdiction Report

On September 18, 2024, the Department filed a jurisdiction/disposition report. In the report, the Department requested that the juvenile court declare R.S. a dependent of the court, continue R.S. in his residential therapeutic program, and offer reunification services to M.S. The Department reported that R.S. did not wish to see or speak with M.S and that M.S. continued to threaten to return R.S. to Haiti on various grounds.

3

## D. Termination of the Probate Guardianship

In early October 2024, represented by counsel, R.S. filed a motion to terminate M.S.'s probate guardianship pursuant to section 728. The Department joined in his motion and submitted a memorandum attaching letters from three of R.S.'s mental health providers. One letter observed that M.S. often addressed misbehavior by R.S. with "significant and seemingly disproportionate consequences," such as threatening to send R.S. to Haiti, which M.S. actually did twice. Another letter reported observing M.S. make statements about sending R.S. back to Haiti and delaying his application for U.S. legal residency or citizenship due to his rebellious behaviors.

The juvenile court scheduled a hearing on R.S.'s motion to terminate the probate guardianship at the end of October. At the hearing, which began on October 29 and concluded on November 4, 2024, R.S. testified that he did not want to return to M.S.'s custody and that he wanted the court to end the guardianship. He recounted that in August 2024 M.S. told him that she was sending him back to Haiti permanently. Because this scared him, the night before he was supposed to go to the airport he ran away and eventually went to ask for help at a house and the police were called.

R.S. also described two prior occasions on which M.S. actually sent him to Haiti. The first was in 2023. During a trip to Los Angeles, M.S. told R.S. that she would be dropping him at the airport and sending him to Haiti. Although R.S. was afraid of gang violence in Haiti, he went and stayed there with an aunt for three or four weeks. During that time, he was terrified because there were gun fights at night only a few blocks from his aunt's house. Although R.S. told M.S. this, in January 2024, M.S. again sent R.S. to Haiti, this time telling him that she was sending him back permanently. Because it was too dangerous to stay with his aunt this time, R.S. stayed with a family friend. Although this was a "slightly . . . bit safer," R.S. still heard gunshots, and he feared gangs would be looking for him because he had left his California school ID at the airport. Three weeks or so later, after seeing news that gang violence was worsening, that the Port-au-Prince

4

airport had closed due to gangs overtaking it, and that the president of Haiti had been assassinated, M.S. made arrangements for R.S. to return to the United States via an armored vehicle to the Dominican Republic.

For her part, M.S. submitted approximately 100 pages of exhibits, consisting of her own written statement and unsigned letters from friends, but did not testify at the hearing or offer any live testimony. M.S. asserted that the trips to Haiti were not intended to be punitive or disciplinary, but rather to maintain R.S.'s connections to his biological family members and home country. In addition, while M.S. conceded that section 728 allowed the juvenile court to terminate her guardianship, she asserted that doing so before the dependency jurisdiction hearing was putting "the cart . . . before the horse."

At the close of the hearing the juvenile court stated that it could terminate legal guardianship prior to the jurisdiction and disposition hearing, and that the standard for doing so was the best interests of the minor. It then determined that terminating the guardianship was in R.S.'s best interest. The court noted that the testimony of R.S. and the statements provided by the Department were "very persuasive." The court also summarized R.S.'s testimony regarding his two trips to Haiti, and the threatened third trip, emphasizing the danger that R.S. felt during those trips in light of the gangs and the gunfire. The court concluded that these incidents, "in addition to all of the other things," resulted in emotional and placement instability and that terminating the guardianship would provide an opportunity to stabilize R.S.'s mental health. R.S., the court explained, "feels scared," "[h]e can't trust his guardian," and "he's not in a stable home environment." The court also observed that R.S. was thriving in his therapeutic placement. Consequently, while the court recognized that terminating the guardianship would cut off contact with M.S.'s family, including R.S.'s "[n]ana" and dog, it concluded that terminating M.S.'s guardianship was in R.S.'s best interests.

5

On November 6, 2024, the juvenile court entered an order terminating the guardianship. M.S. timely noticed an appeal.

## II. DISCUSSION

M.S. does not dispute that substantial evidence supports the juvenile court's finding that terminating her guardianship over R.S. was in his best interests. Nor does she contend that in reaching this conclusion the juvenile court misapplied law or abused its discretion. Instead, M.S. argues that the juvenile court failed to establish jurisdiction in this case. Because this argument raises issues "involving the interpretation and proper application of the dependency statutes," we review it de novo. (*In re M.F.* (2022) 74 Cal.App.5th 86, 100.)

The term jurisdiction " 'embraces a large number of ideas of similar character,' " including fundamental or subject matter jurisdiction, personal jurisdiction, and the authority to make particular rulings. (*In re Angel S.* (2007) 156 Cal.App.4th 1202, 1209 (*Angel S.*).) For the most part, M.S. appears to be using the term jurisdiction in the last sense of authority to act. However, M.S. also questions both fundamental jurisdiction and personal jurisdiction. Accordingly, we begin by addressing those issues.

### A. Fundamental Jurisdiction

"Fundamental jurisdiction is, at its core, authority over both the subject matter and the parties." (*People v. Chavez* (2018) 4 Cal.5th 771, 780.) In California, "fundamental jurisdiction over juvenile dependency cases such as this is governed by Welfare and Institutions Code section 300 . . . ." (*In re J.W.* (2020) 53 Cal.App.5th 347, 357.) Section 300 states that a child "is within the jurisdiction of the juvenile court" if the child falls within one of ten listed categories, including that the child "has been left without any provision for support" or his custodian was "unwilling or unable to provide care or support for the child." (§ 300, subd. (g).) Here, the Department filed a petition alleging that R.S. had been "left without provision for support" and M.S. was "unwilling and /or unable to provide care and support" for him. Accordingly, the trial court had subject

6

matter jurisdiction. (*Angel S.*, *supra*, 156 Cal.App.4th at p. 1209 ["Because the minor . . . was also the subject of a dependency petition, the juvenile court had fundamental jurisdiction to exercise its power to terminate the probate guardianship."].)

## B. Personal Jurisdiction

The trial court also had personal jurisdiction over M.S. In a dependency proceeding, the juvenile court obtains personal jurisdiction over a parent or guardian when the parent or guardian is properly noticed. (See, e.g., *In re Daniel S.* (2004) 115 Cal.App.4th 903, 916 ["Personal jurisdiction over a parent in dependency proceedings is obtained when the parent is properly noticed . . . ."].) M.S. received such notice. In addition, she appeared at the termination hearing, which provides further grounds for exercising personal jurisdiction over her. (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 311.) As a consequence, the juvenile court had personal jurisdiction over M.S.

## C. Authority to Terminate Probate Guardianship

M.S.'s primary argument on appeal is that the juvenile court lacked authority to terminate her guardianship because it attempted to do so "pre-adjudication of the minor as a dependent" and therefore before establishing dependency jurisdiction. This argument conflicts with the plain language of section 728, the statute that grants juvenile courts the authority to terminate probate guardianships, and well-settled interpretation of that section.

Although probate guardianship is somewhat broader and has greater rights than dependency guardianship (see *Dora V. v. Superior Court* (2024) 104 Cal.App.5th 987, 1002; *Merrick V.*, *supra*, 122 Cal.App.4th at p. 250), section 728 authorizes the juvenile court to terminate a probate guardianship if a dependency petition under section 300 has been filed. Specifically, section 728 provides that "[t]he juvenile court may terminate or modify a guardianship of the person of a minor previously established under the Probate Code, or appoint a coguardian or successor guardian of the person of the minor, if the

7

minor is the subject of a petition filed under Section 300, 601, or 602." (§ 728, subd. (a).) Here, as noted above, R.S. was the subject of a petition filed under section 300. As a consequence, under section 728, the juvenile court had authority to terminate the guardianship of M.S. over R.S. previously established under the Probate Code even though it had not yet determined R.S. to be a dependent under section 300.

This conclusion is supported by the California Rules of Court. The rules expressly recognize that "[a]t any time" after filing of a dependency petition under section 300 and before the petition is dismissed or dependency is terminated, a juvenile court may terminate a probate guardianship: "At any time after the filing of a petition under section 300 and until the petition is dismissed or dependency is terminated, the court may terminate or modify a guardianship of the person previously established under the Probate Code." (Cal. Rules of Court, rule 5.620(e).) Thus, according to the Rules of Court, the juvenile court had authority to terminate M.S.'s probate guardianship before adjudicating whether R.S. was a dependent. Moreover, the Rules of Court are promulgated by the Judicial Council, which includes appellate and trial judges, and its process for promulgating rules include procedures that ensure their reliability. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1013.) Accordingly, as the Supreme Court has recognized, where a Rule of Court interprets a statute, that interpretation is "entitled to great weight." (*Id*. at p. 1014.)

Courts, albeit in dictum, have long interpreted section 728 in the same fashion. Because section 728 becomes operative once a petition under section 300 is filed concerning a child, courts have interpreted the section 728 to "give[] the juvenile court the authority to terminate a Probate Code guardianship *at any stage* in the dependency proceeding, including at the detention hearing or the jurisdictional hearing." (*Merrick V.*, *supra*, 122 Cal.App.4th at p. 253, italics added; see also *A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1388 ["when a minor who is a ward under an existing probate guardianship becomes subject of dependency proceedings, the juvenile court has

jurisdiction under section 728 to *terminate* the probate guardianship"]; *In re Xavier R.* (2011) 201 Cal.App.4th 1398, 1414 (*Xavier R.*) ["section 728 gives the juvenile court the authority to terminate a probate guardianship at any stage in the dependency proceeding"].)  "Thus, there is no time limit . . . on when a section 728 motion to terminate a probate guardianship may be made." (*Xavier R.*, at p. 1415.)

In arguing that the juvenile court lacked authority to terminate her probate guardianship before establishing that R.S. was a dependent, M.S. cites no decisions or other authority.  Nor does she explain how this requirement of establishing dependency can be found in section 728's statement that a juvenile court may terminate a probate guardianship "if the minor is the subject of a petition filed under Section 300 . . . ." (§ 728, subd. (a).)  Instead, M.S. relies upon a subsequent statement in section 728 regarding when a hearing on a motion to terminate guardianship may be held:  "The hearing on the motion may be held simultaneously with any regularly scheduled hearing held in proceedings to declare the minor a dependent child or ward of the court, or any subsequent hearing concerning the dependent child or ward . . . ." (*Ibid.*)  M.S. asserts that any "regularly scheduled hearing" in a proceeding to declare a minor a dependent necessarily "occurs after jurisdiction is established and at the disposition hearing in the juvenile dependency proceedings, or later."  Therefore, in M.S.'s view, under section 728 a motion to terminate a probate guardianship "can only be heard simultaneously to adjudicating the minor a dependent" or at a subsequent hearing.

We disagree.  In the first place, the statement on which M.S. relies does not require that hearings on terminating probate guardianship occur at or after a particular point:  It simply states that such hearings "*may* be held simultaneously with any regularly scheduled hearing held in proceedings to declare the minor a dependent child . . . or any subsequent hearing concerning the dependent child . . . ." (§ 728, subd. (a), italics added.)  "It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory,

9

particularly when both terms are used in the same statute." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443.) This principle squarely applies here. Section 728 states that a hearing on terminating probate guardianship "may" be held simultaneously with regularly scheduled hearings in a dependency proceeding and then in the next sentence directs that certain notice requirements "shall" apply. (§ 728, subd. (a).) In addition, far from exempting its provisions from this principle, "the Welfare and Institutions Code specifically provides the word [may] is permissive." (*Victoria S. v. Superior Court* (2004) 118 Cal.App.4th 729, 733; see also § 15 [" 'may' is permissive"].) Consequently, we interpret section 728 to permit a juvenile court to hold a termination hearing simultaneous with or subsequent to hearings on dependency, but not to require that the termination hearing be held at any particular point relative to the dependency proceedings.

In addition, the simultaneous hearings authorized by section 728 need not be at or after the determination of dependency. M.R. assumes that the only "regularly scheduled hearing held in proceedings to declare the minor a dependent child" is the jurisdictional or dispositional hearing. In fact, dependency cases typically begin when a child is removed from the home because a peace officer, probation officer, or social worker has a reasonable belief that the child falls within section 300 and is in immediate danger; a dependency petition is filed; and a detention hearing is held under section 315. (*Merrick V.*, *supra*, 122 Cal.App.4th at p. 252; see also § 315 [if a child has been taken into custody, "the juvenile court shall hold a hearing (which shall be referred to as a 'detention hearing') . . . not later than the expiration of the next judicial day after a petition to declare the child a dependent child has been filed"].) Thus, a detention hearing is a "regularly scheduled hearing" in a proceeding to declare a child dependent. Consequently, even if section 728 were mandatory rather than permissive, it would be naturally interpreted to authorize hearings on the termination of probate guardianship after the detention hearing and before the jurisdictional or dispositional hearing. Indeed,

10

if the Legislature had intended to require termination hearings to be conducted after establishment of dependency jurisdiction, it could have done so in a much clearer fashion than stating such hearings "may be held simultaneously with any regularly scheduled hearing held in proceedings to declare the minor a dependent child."  (§ 728.)

We therefore conclude, consistent with the plain language of section 728, the Rules of Court, and prior decisions, that section 728 does not prohibit a juvenile court from terminating a probate guardianship over a child before determining whether that child is a dependent of the court.  In light of this conclusion, we need not address M.S.'s argument that, as R.S.'s guardian, she was deprived of due process when she was not allowed to participate in the hearing on dependency jurisdiction.

### III.  DISPOSITION

The order terminating the guardianship of R.S. is affirmed.

11

_____
BROMBERG, J.

WE CONCUR:


_____
DANNER, ACTING P. J.


_____
RODRIGUEZ, J.*


*In re R.S.; Santa Cruz County HSD v. M.S.*
H052758

---

\* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.